UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| MICHAEL GREEN,<br><br>    Plaintiff,<br><br>v.<br><br>JASON ANDERSON et al.,<br><br>    Defendants. | Case No. 5:24-cv-00050-SB-SP<br><br>ORDER GRANTING MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT [DKT. NO. 27] |

    Amanda Baxter owned four parcels of land in San Bernardino County on which large quantities of marijuana were grown.  After law enforcement executed search warrants on the properties and found tens of thousands of live marijuana plants, hundreds of pounds of processed marijuana, and multiple firearms, Baxter deeded all four properties to Plaintiff Michael Green (MG), a corporation she had incorporated and for which Plaintiff's counsel is the CEO, CFO, and director.  MG then entered into agreements with various tribal entities, including the Crow Tribe, which purportedly obtained an ownership interest in MG.  In the wake of the criminal prosecution of Baxter and facing ongoing nuisance abatement proceedings, MG filed this action alleging violations of the Indian Commerce Clause and seeking to enjoin the County and its district attorney from entering the properties to destroy or remove MG's greenhouses.  Defendants move to dismiss the case for a variety of reasons.  Dkt. No. 27.  The Court held a hearing on April 26, 2024 and now finds that comity concerns warrant abstention under *Younger v. Harris*, 401 U.S. 37 (1971).

I.

    MG filed this action, followed promptly by the operative First Amended Complaint (FAC), alleging that it is a California corporation majority owned by a tribal conglomerate led by the Crow Tribe of Montana.  Dkt. No. 8 ¶ 1.  The FAC alleges that MG "acquired several hundred acres of land in San Bernardino County," improved with several hundred greenhouses, "from a private property owner, Amanda Baxter."  *Id*.  Although the FAC alleges that the acquisition occurred in 2021, *id*., it attaches grant deeds transferring the four properties at

issue from Baxter to MG on December 28, 2022.  Dkt. No. 8-1, exs. A–D.[1]  The FAC alleges that Baxter, "the former absentee property owner" and a resident of Texas, "was involved in . . . San Bernardino Superior Court in a criminal case arising out of her tenants' operation of an illegal cannabis growing operation on the MG property," and that all agricultural activity on the properties was halted by the time MG acquired them.  Dkt. No. 8 ¶ 2.

In March 2023, Baxter agreed to cooperate with the District Attorney of San Bernardino County, Defendant Jason Anderson, but she allegedly "had no idea that remediation might entail entering into those properties, which she no longer owned or controlled."  *Id.*  Anderson thereafter requested permission from a state court to enter the properties to destroy or remove the greenhouses on them, and the County has separately issued citations alleging nonconforming use of the land.  *Id.*  Invoking the Indian Commerce Clause, U.S. Const. art. I, § 8, cl. 3, and the Crow Tribe's sovereign immunity, MG filed this action seeking declaratory and injunctive relief to prevent the County and Anderson from interfering with what MG calls its tribal economic activity.  After MG sought a temporary restraining order, the parties entered into a stipulation that Defendants would not remove structures on the properties until the Court ruled on their motion to dismiss the FAC.  Dkt. No. 24.

As clarified in Defendants' motion and the exhibits in support thereof, the FAC paints a picture that is, at best, incomplete.  While presenting Baxter as merely a former absentee landlord, the FAC fails to mention that Baxter incorporated MG in 2021, Dkt. No. 8-1, ex. E; that Michael Meyer, MG's counsel in this case, is also the director, CEO, CFO, and secretary of MG, *id.*, ex. F; or that Meyer represented Baxter in her criminal proceeding, Dkt. No. 27-3, ex. L-1 (August 31, 2023 minute order noting that Meyer was relieved as Baxter's counsel).  Meyer also filed a lengthy declaration as an exhibit to the FAC, in which he purports to have extensive personal knowledge of the underlying events in the case, including representations about what Baxter "thought," "plan[ned]," and "desire[d]."  Dkt. No. 8-1, ex. G ¶¶ 3–5.  And contrary to MG's assertion that no illegal activity has occurred on the properties since it took ownership, Defendants

---

[1] The FAC also alleges that "the Crow Tribe formally adopted the acquisition on December 12, 2022" and that Baxter "no longer held any right, title or interest in or to the land after July 2022."  Dkt. No. 8 ¶ 2.  The FAC makes no attempt to reconcile the four different dates or explain how Baxter could deed the properties to MG in December 2022 if she no longer had any interest in them in July 2022.

produce uncontroverted evidence that law enforcement officers executing a search warrant on one of the properties in April 2023 found and destroyed thousands of live marijuana plants.  Dkt. No. 27-3, ex. P.  The Code Enforcement Division of the County's Land Use Services Department has also issued to MG numerous nuisance notices and citations for the properties and obtained and executed an abatement warrant as recently as February 2024—after the filing of this case.  *E.g.*, Dkt. No. 27-3, ex. U.

## II.

Defendants' primary argument for dismissal is that the Court should abstain from exercising jurisdiction under *Younger* because allowing the case to proceed would interfere with the ongoing state proceedings.[2]  The Ninth Circuit "ha[s] not squarely held whether abstention is properly raised under Rule 12(b)(6), Rule 12(b)(1), both, or neither."  *Courthouse News Serv. v. Planet*, 750 F.3d 776, 780 n.2 (9th Cir. 2014) (declining to answer the question).  Neither side has addressed the appropriate procedural vehicle for Defendants' *Younger* challenge, and MG has not objected—either in its opposition or at the hearing—to Defendants' reliance on evidence outside the pleadings.  The Court therefore treats Defendants' motion as a factual Rule 12(b)(1) challenge and will consider the evidence produced by Defendants.[3]  *See Serafin v. Realmark Holdings, LLC*, No. 23-CV-03275, 2023 WL 7110708, at *2 (N.D. Cal. Oct. 26, 2023) (taking this approach).

---

[2] Defendants also briefly argue that MG's case is so patently without merit that the Court lacks subject-matter jurisdiction.  *See Bell v. Hood*, 327 U.S. 678, 682–83 (1946) (noting that "a suit may sometimes be dismissed for want of jurisdiction where the alleged claim under the Constitution or federal statutes clearly appears to be immaterial and made solely for the purpose of obtaining jurisdiction or where such a claim is wholly insubstantial and frivolous").  As in *Bell*, "the alleged violations of the Constitution here are not immaterial but form rather the sole basis of the relief sought," and any flaws in MG's claims go to their merits.  *Id*. at 683.  Thus, the Court has jurisdiction over this case; the question is whether it should abstain from exercising that jurisdiction under *Younger*.

[3] Defendants' request for judicial notice, Dkt. No. 27-1, is granted as to the docket from Baxter's criminal case.  The request for judicial notice of the FAC and two documents MG filed with the California Secretary of State is denied as unnecessary, as those documents are part of the pleadings already filed by MG.

3

In *Younger*, the Supreme Court explained that federal courts generally should abstain from entering injunctions that would interfere with ongoing state criminal proceedings, based on "the basic doctrine of equity jurisprudence that courts of equity should not act . . . to restrain a criminal prosecution, when the moving party has an adequate remedy at law and will not suffer irreparably injury if denied equitable relief." *Sprint Commc'ns, Inc. v. Jacobs*, 571 U.S. 69, 77 (2013) (quoting *Younger*, 401 U.S. at 43–44). The doctrine has been expanded to preclude interference with certain civil proceedings. Thus, under *Younger*, federal courts "must abstain in deference to state civil enforcement proceedings that: (1) are ongoing, (2) are quasi-criminal enforcement actions or involve a state's interest in enforcing the orders and judgments of its courts, (3) implicate an important state interest, and (4) allow litigants to raise federal challenges." *Nationwide Biweekly Admin., Inc. v. Owen*, 873 F.3d 716, 727 (9th Cir. 2017) (cleaned up). *Younger* abstention is grounded in a "longstanding public policy against federal court interference with state court proceedings." *Younger*, 401 U.S. at 43. The doctrine "permits federal courts to preserve respect for state functions such that the national government protects federal rights and interests in a way that will not unduly interfere with the legitimate activities of the States." *Herrera v. City of Palmdale*, 918 F.3d 1037, 1043 (9th Cir. 2019) (cleaned up).

MG concedes in its opposition that "Defendants established that certain ongoing state proceedings would be impacted by Plaintiff's federal action based on the doctrine in *Younger*." Dkt. No. 30 at 9. MG argues, however, that (1) the "pending state court criminal proceedings" are irrelevant because they are directed at another party (Baxter), (2) this action does not delay or duplicate the state criminal proceedings, (3) the citations and enforcement actions against MG are executive actions to which *Younger* does not apply, and (4) MG does not have adequate relief in state court. *Id*. at 9–14.

As to the first two arguments, the parties' briefing provided little information about the status of the criminal proceedings against Baxter, although MG described them as "pending," and Defendants produced evidence of an upcoming restitution hearing. Dkt. No. 27-3, ex. L at 104 of 258. At the motion hearing in this case, the parties clarified (and neither side disputed) that the criminal restitution hearing next month is focused on the government's intended entrance onto the properties to destroy the remaining greenhouses and its desire to charge Baxter more than $500,000 for the required work.

The fact that Baxter is a nonparty to this action does not preclude *Younger* abstention, which may apply where "a federal plaintiff's interests are so

4

intertwined with those of the state court party that interference with the state court proceeding is inevitable." *Vasquez v. Rackauckas*, 734 F.3d 1025, 1035 (9th Cir. 2013) (cleaned up); *see also Herrera*, 918 F.3d at 1047 ("Because the parties' interests were 'intertwined' with those of the state court defendants, *Younger* abstention was proper as to all federal plaintiffs."). Baxter's incorporation of MG and sale of the properties to MG in the middle of the County's investigation and prosecution of the illegal marijuana-growing activity suggests an intertwining of interests that by itself may suffice to invoke *Younger*. The parties' representations at the hearing confirm that MG's interests are inextricably intertwined with the issues in the prosecution of Baxter: MG admitted that it is seeking an order from this Court to preclude the state criminal court from approving the restitution sought by the government against Baxter, which would permit destruction of the greenhouses MG claims to own. Indeed, MG has named the district attorney as a defendant and seeks in this action to prevent him from accessing the properties in connection with the criminal case. MG's conclusory argument that this action would not delay the criminal proceedings therefore falls flat. MG's attempt in this case to interfere with the state's ability to prosecute an ongoing criminal case plainly implicates *Younger*. MG has not argued, and the record does not suggest, that exceptional circumstances justify a departure from *Younger*'s rule.[4] Thus, abstention is required. *See ReadyLink Healthcare, Inc. v. State Comp. Ins. Fund*, 754 F.3d 754, 758 (9th Cir. 2014) (under *Younger*, "federal courts sitting in equity cannot, absent exceptional circumstances, enjoin pending state criminal proceedings").

In addition to the criminal proceedings against Baxter, the County's ongoing civil nuisance enforcement activity against MG—on which Defendants principally rely in their briefing—independently warrants abstention under *Younger*. MG

---

[4] At the hearing, MG for the first time made passing references to bad faith and harassment by the County. It is undisputed that the County's challenged actions were precipitated by law enforcement's discovery of tens of thousands of marijuana plants growing on the properties, along with firearms and hundreds of pounds of processed marijuana. MG has identified no facts suggesting that the County initiated the criminal prosecution (in which Baxter pleaded guilty) and nuisance actions in bad faith or with the intent to harass Baxter or MG. *Cf. Applied Underwriters, Inc. v. Lara*, 37 F.4th 579, 596 (9th Cir. 2022) (bad faith exception to *Younger* abstention applies when prosecution is brought without a reasonable expectation of obtaining a valid conviction or in cases of repeated harassment by authorities with no intention of securing a conclusive resolution).

argues that the County's nuisance citations and notices are executive actions and not a pending state judicial proceeding to which *Younger* abstention applies. The Supreme Court has expanded the *Younger* doctrine to some civil proceedings, recognizing in *Huffman v. Pursue, Ltd.* that "an offense to the State's interest in . . . nuisance litigation is likely to be every bit as great as it would be were this a criminal proceeding." 420 U.S. 592, 604 (1975). Relying on *Huffman*, the Ninth Circuit has held that "a state nuisance proceeding" is a civil enforcement proceeding that is akin to a criminal prosecution and implicates important state interests, such that *Younger* abstention may be warranted. *Herrera*, 918 F.3d at 1044–45; *accord Woodfeathers, Inc. v. Washington County*, 180 F.3d 1017, 1021 (9th Cir. 1999) ("Civil actions brought by a government entity to enforce nuisance laws have been held to justify *Younger* abstention.").

MG is correct that *Herrera* involved a nuisance lawsuit filed in state court. Here, it appears that the County has not filed a similar lawsuit against MG; the record instead contains numerous notices of violations, administrative citations, notices of intent to abate, and an executed abatement warrant.[5] But contrary to MG's suggestion, the Supreme Court in *New Orleans Public Service, Inc. v. Council of City of New Orleans* (*NOPSI*), 491 U.S. 350 (1989), did not hold that such notices and citations are executive actions outside the scope of *Younger*. *NOPSI* involved a challenge to the exercise of state ratemaking authority, which the Court found was a legislative function to which *Younger* was inapplicable. In doing so, the Court noted that it had "expanded *Younger* beyond criminal proceedings, and even beyond proceedings in courts," but not to "proceedings that are not 'judicial in nature.'" *Id*. at 369–70. As *NOPSI* explained, an inquiry is judicial in nature if it "investigates, declares and enforces liabilities as they stand on present or past facts and under laws supposed already to exist," in contrast to future-focused exercises of legislative authority. *Id*. at 370 (quoting *Prentis v. Atl. Coast Line Co.*, 211 U.S. 210, 226 (1908)).

Here, the nuisance citations, notices, and warrant are judicial in nature within *NOPSI*'s definition; they seek to address existing violations of law on MG's properties. And the absence of an accompanying nuisance lawsuit does not appear to be fatal to Defendants' argument. In *Citizens for Free Speech, LLC v. County of*

---

[5] Defendants' motion references "[t]he nuisance action pending against Plaintiff in state court," which it contends "closely resembles the nuisance action that was pending in state court in *Herrera*," Dkt. No. 27 at 5, but Defendants provide no information about any civil lawsuit pending against MG.

*Alameda*, the Ninth Circuit held that nuisance abatement proceedings fall into the category of civil enforcement proceedings to which *Younger* applies and affirmed abstention where the city had not filed a civil lawsuit but had conducted an investigation, "alleged violations of nuisance ordinances," and provided "notice to appear before a zoning board," backed up by "the possibility of monetary fines and/or forcible removal of [the plaintiff's] billboards."  953 F.3d 655, 657 (9th Cir. 2020).  The court noted that the administrative proceeding included a process for appealing an adverse decision by the zoning board.  *Id*.  Here, similarly, the County's January 25, 2023 Notice of Intent to Abate and Remove provided an opportunity for an appeal of the County's nuisance findings, and MG took that opportunity, filing an appeal the next month.  Dkt. No. 27-3, exs. Q, R.  The County's administrative citations likewise provided opportunities to appeal.  *Id*., exs. S, T.  Moreover, the various citations, notices of violation, and notices of intent to abate identify numerous violations of the County's nuisance prohibitions and impose monetary penalties for MG's noncompliance.  *E.g.*, *id.*, exs. Q, S, T.  Accordingly, under Ninth Circuit law, the County's ongoing nuisance proceedings serve an important state interest and constitute civil enforcement proceedings within the scope of the *Younger* doctrine.  *Herrera*, 918 F.3d at 1045.  And as MG acknowledged at the hearing, it is asking the Court in this action to issue an order to halt those proceedings.

Finally, MG's argument that it does not have adequate relief in state courts is unavailing.  "A federal court's exercise of *Younger* abstention does not turn on whether the federal plaintiff actually avails himself of the opportunity to present federal constitutional claims in the state proceeding, but rather whether such an opportunity exists."  *Id*. at 1046.  The burden is on the party opposing abstention to show that state procedural law bars presentation of its claims.  *Id*.  Here, MG argues that while state courts have the power to hear federal claims, "it doesn't necessarily mean that state courts are obligated to hear federal claims."  Dkt. No. 30 at 13.  MG's unsupported speculation that a state court might decline to consider its federal constitutional challenges to the County's enforcement actions does not meet its burden to show that state law bars consideration of its arguments.  *See Citizens for Free Speech*, 953 F.3d at 657 (holding that nuisance abatement proceeding allowed adequate opportunity to raise federal challenges because California law permits litigants to seek judicial review of adverse administrative decisions and to raise federal claims); *Ohio C.R. Comm'n v. Dayton Christian Sch., Inc.*, 477 U.S. 619, 629 (1986) (for purposes of *Younger* abstention, "it is sufficient . . . that constitutional claims may be raised in state-court judicial review of the administrative proceeding"); *Tafflin v. Levitt*, 493 U.S. 455, 458 (1990) ("[W]e have consistently held that state courts have inherent authority, and are thus

presumptively competent, to adjudicate claims arising under the laws of the United States.").

On this record, the Court finds that allowing this action to proceed would interfere with both the ongoing criminal prosecution of Baxter and ongoing quasi-criminal enforcement proceedings that implicate San Bernardino's interest in enforcing its nuisance laws.  If MG wishes to challenge the County's authority to enter MG's property and remove the greenhouses, it is free to assert its constitutional claims in state court.  Accordingly, *Younger* compels abstention and dismissal of MG's claims for injunctive and declaratory relief.  *See Herrera*, 918 F.3d at 1042 ("[W]hen a court abstains under *Younger*, claims for injunctive and declaratory relief are typically dismissed.").  The Court therefore does not reach Defendants' additional arguments about the merits of MG's claims or its failure to join the Crow Tribe as a necessary party.

III.

Defendants' motion to dismiss is granted, the Court abstains from exercising jurisdiction over the claims in this case, and Plaintiff Michael Green's claims are dismissed without prejudice.

A final judgment will be issued separately.

Date: April 26, 2024

                                              Stanley Blumenfeld, Jr.
                                              United States District Judge